NOT DESIGNATED FOR PUBLICATION

No. 112,637

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSE D. ALVAREZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed March 25, 2016. Affirmed.

*Allie J. Prester*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Ian D. Tomasic*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and POWELL, JJ.

*Per Curiam*: A jury found Jesse D. Alvarez guilty of possession of marijuana with the intent to distribute and possession of drug paraphernalia. He now appeals his convictions on five grounds: (1) The district court violated his constitutional rights by diluting the burden of proof when it improperly combined the elements instruction of Count 1 with a lesser included offense; (2) the district court erred in failing to give the jury a limiting instruction when uncharged bad acts evidence was admitted; (3) the district court erred when it gave a preliminary instruction to the jury that a mistrial would

1

be a tremendous expense and burden to both sides; (4) the prosecutor committed prosecutorial misconduct during voir dire by diluting the jury's power to nullify by asking jurors if they could put aside their personal views and try the case according to the law; and (5) cumulative error denied him a fair trial.

Because we find that (1) Alvarez invited the error by requesting the very elements instruction concerning Count 1 and cannot now complain on appeal that such an instruction was error, (2) the failure of the district court to give the jury a limiting instruction was not clearly erroneous as we are not firmly convinced the jury would have reached a different verdict had a limiting instruction been given, and (3) no other error occurred during the trial, we affirm Alvarez' convictions.

FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 2014, at approximately 10:50 p.m., Deputy Daniel Anderson of the Wyandotte County Sheriff's Office was on patrol in downtown Kansas City, Kansas, when he observed a black Volvo with one of its headlights out. Anderson stopped the vehicle and upon reaching it noticed a strong odor of marijuana. Anderson asked the driver to exit the vehicle and identified him as Alvarez.

The deputy asked Alvarez if he had any weapons or narcotics in his vehicle, and Alvarez responded that he had a jar of marijuana on the back seat of his car. Alvarez gave Anderson consent to search the vehicle. During this search, Anderson found a mason jar full of a leafy substance, a spice jar full of a leafy substance, a large bag full of a leafy substance, and some small bags with some residue in them.

The day after the stop, Alvarez gave Detective David Dagenett of the Wyandotte County Sheriff's Office consent to search his car a second time. During this second search, deputies found, among other things, a digital scale, multiple knives, a tissue box

2

containing U.S. currency totaling more than $11,900, a Band-Aid container with drug paraphernalia in it, a 1-gallon bag of loose marijuana, additional mason jars containing marijuana, and one empty glass jar with an odor of marijuana. Some of the leafy substance was sent to the Kansas Bureau of Investigation for testing, and it tested positive for marijuana. Dagenett testified that he used a digital scale to weigh all of the leafy substance found and that it totaled 512 grams.

Dagenett testified that he interviewed Alvarez, and Alvarez said he lived in the state of Washington and was on a road trip to Florida. Alvarez stated he stopped in Kansas City to visit a friend whose wife had just had a baby. Alvarez stated that he bought the marijuana found in the car from someone named Rabbit who he had run into when he was looking to purchase marijuana. Alvarez claimed the marijuana was for personal use to be consumed with his e-cigarette as an oil or paste. He also said he bought 1/4 pound of marijuana for $1,000 from Rabbit. Alvarez said that Rabbit and Rabbit's friend had given him $6,000 to buy better marijuana in California for them, but Alvarez had not yet decided how he was going to get the marijuana back to Rabbit in Kansas City. Alvarez told the detective that the remaining $5,500 found in his car was from gambling winnings.

Dagenett testified that based on his training and experience and the amount of marijuana, the knives, the digital scale, and the amount of currency found in Alvarez' car, Alvarez possessed the marijuana with the intent to distribute. He also testified that he had never seen a case where somebody had this quantity of marijuana along with that amount of cash for personal use.

Alvarez was charged with possession of marijuana with the intent to distribute, possession of a controlled substance without a tax stamp, and possession of drug paraphernalia. During trial the district court granted Alvarez' motion for acquittal on the

3

no tax stamp count, and the jury found Alvarez guilty of the remaining counts. The district court sentenced Alvarez to 99 months in prison.

Alvarez timely appeals.

### DID THE JURY INSTRUCTIONS AND JURY VERDICT FORM CONTAIN REVERSIBLE ERROR?

First, Alvarez argues that the jury instructions were improper because the given instruction for Count 1 included both the charged crime and a lesser included offense and the jury verdict form included a special question.

Our standard of review when addressing challenges to jury instructions is based upon the following analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

As our standard of review dictates, before turning to the merits of Alvarez' complaint, we must first decide whether we may consider it. The State argues that Alvarez waived his ability to challenge the jury instruction given for Count 1 because he never objected below and that he invited the error because his trial counsel requested the instruction. Alvarez counters that the invited error rule does not apply to situations in which there was structural error.

4

The State is correct that a party cannot claim error for the district court's giving of a jury instruction unless the party objects or the instruction is clearly erroneous. See K.S.A. 2015 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). It is also true that a litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Moreover, an appellate court need not consider whether the giving of a particular instruction was clearly erroneous when the challenge was precluded by the invited error rule. See *State v. Jones*, 295 Kan. 804, 811-12, 286 P.3d 562 (2012). However, "the invited error doctrine is inapplicable when a constitutional error is structural." *Verser*, 299 Kan. at 784. Accordingly, we must determine whether Alvarez' complaint about the jury instructions amounts to a claim of structural error.

At trial the jury was given, among others, the following two instructions:

"INSTRUCTION NO. 5:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

and, in relevant part:

"INSTRUCTION NO. 6:

. . . .

"To establish this charge, each of the following claims must be proved:

"1. The defendant possessed with the intent to distribute Marijuana.

"2. The quantity of the marijuana possessed with intent to distribute was:

5

a) at least 450 grams, but less than 30 kilograms; OR

b) at least 25 grams, but less than 450 grams."

The verdict form stated in relevant part:

"We, the jury, find the defendant, Jesse D. Alvarez, guilty of Possession of
Marijuana with the Intent to Distribute and find the quantity of the Marijuana to be:

"□ At least 450 grams, but less than 30 kilograms;

"□ At least 25 grams, but less than 450 grams.

"(Place an X in the appropriate square)

"OR

"We, the jury, find the defendant, Jesse D. Alvarez, guilty of Possession of
Marijuana.

"OR

"We, the jury, find the defendant, Jesse D. Alvarez, not guilty."

Alvarez argues that Instruction No. 6 misstated the State's burden of proof;
therefore, the error is structural and automatic reversal is required. Specifically, he
complains that the jury was allowed to convict him of possession with intent to distribute
without unanimously deciding that the amount possessed was at least 450 grams. He
contends that possession with intent to distribute at least 25 grams but less than 450
grams is a lesser included offense which should have been given in a separate instruction.
He also argues the verdict form improperly contained a special question.

"Errors are structural when they defy analysis by harmless-error standards because
they affect the framework within which the trial proceeds." *State v. Jones*, 290 Kan. 373,
Syl. ¶ 7, 228 P.3d 394 (2010). Structural error requires automatic reversal and cannot be
invited. See *State v. Hill*, 271 Kan. 929, 934, 26 P.3d 1267 (2001), *overruled on other
grounds by State v. Voyles*, 284 Kan. 239, 252-53, 160 P.3d 794 (2007). Few errors have
been held to constitute structural error. See *United States v. Marcus*, 560 U.S. 258, 263,
130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010) (short list of structural errors includes total

6

deprivation of counsel, lack of impartial trial judge, denial of right to self-representation at trial, violation of right to public trial, and erroneous reasonable doubt instruction).

Regarding jury instructions, only a misstatement of the State's burden of proof has been held to be structural error. *Sullivan v. Louisiana*, 508 U.S. 275, 281-82, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993); *Miller v. State*, 298 Kan. 921, 923, 318 P.3d 155 (2014). Other errors regarding jury instructions, such as omitting an element of the charged crime from the jury instructions, are subject to a harmless error standard. See *Neder v. United States*, 527 U.S. 1, 9-10, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *State v. Reyna*, 290 Kan. 666, 679-82, 234 P.3d 761, *cert. denied* 131 S. Ct. 532 (2010). "'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" *Neder*, 527 U.S. at 8 (quoting *Rose v. Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 [1986]).

> "When reviewing challenges to jury instructions, an appellate court is required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous." *State v. Peterson*, 273 Kan. 217, Syl. ¶ 1, 42 P.3d 137 (2002).

We do not agree with Alvarez' contention that the State's burden of proof was diluted. When reading the jury instructions as a whole, Instruction No. 5, which comports with PIK Crim. 4th 51.010, correctly sets forth the burden of proof. Instruction No. 5 required the jury to find each element of Instruction No. 6 beyond a reasonable doubt, and insertion of the word "or" between the elements showing the amounts possessed did not change that requirement. While we agree that it would have been proper to list the lesser amount possessed as a separate instruction, we do not see how the jury was not informed of its obligation to find that the State prove each and every element beyond a

reasonable doubt. Finally, Alvarez had the benefit of counsel and was tried by an impartial adjudicator. Accordingly, we see no constitutional infirmity here as the burden of proof was not diluted. Therefore, there was no structural error.

We then return to the question of whether Alvarez invited the error of which he now complains. Under the invited error doctrine, "a defendant cannot challenge an instruction, even as clearly erroneous under K.S.A. 22-3414(3), when there has been on-the-record agreement to the wording of the instruction at trial." *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012). That is what happened here. Not only did defense counsel agree on the record to the wording of Instruction No. 6, but he also proposed it. Additionally, defense counsel agreed to the jury verdict form. Because there was an on-the-record agreement as to the wording of the instruction and verdict form at trial, Alvarez invited any error and cannot now challenge the instruction or the verdict form.

DID THE DISTRICT COURT ERR BY FAILING TO GIVE A LIMITING INSTRUCTION?

Second, Alvarez argues for the first time on appeal that the trial court erred by failing to give the jury a limiting instruction on uncharged bad acts. Because this issue was not raised below, our duty is to evaluate the appropriateness of the jury instruction under the clear error standard. See K.S.A. 2015 Supp. 22-3414(3). Under this standard, we must first consider if the failure to give a limiting instruction was an error. *Williams*, 295 Kan. at 515-16. We do that by reviewing the legal appropriateness of such an instruction de novo and the factual appropriateness in the light most favorable to Alvarez. See *State v. Dominguez*, 299 Kan. 567, 573-74, 328 P.3d 1094 (2014).

When admitting evidence of uncharged crimes under K.S.A. 2015 Supp. 60-455, a district judge should give a limiting instruction to the jury. *State v. Gunby*, 282 Kan. 39, 58, 144 P.3d 647 (2006). The State concedes it was an error for the district court not to give a limiting instruction because evidence of Alvarez' plan to buy marijuana in

8

California and bring it back to Kansas City was admitted. However, we need not decide the propriety of giving a limiting instruction because even assuming the district court erred by failing to give a limiting instruction, such a failure was not clearly erroneous. See *Gunby*, 282 Kan. at 58-59.

Under the clearly erroneous standard, Alvarez has the burden to firmly convince us, after review of the entire record, that the jury would have reached a different verdict had a limiting instruction been given. See *State v. Breeden*, 297 Kan. 567, 584, 304 P.3d 660 (2013). Our assessment of any injustice involves a review of the entire record and a de novo determination. *Williams*, 295 Kan. at 516.

The State used the evidence of Alvarez' agreement with Rabbit to purchase marijuana in California and bring it back to contradict Alvarez' assertion that the marijuana was purely for personal use. Even if we ignored the evidence that Alvarez intended to bring marijuana back to Rabbit, there was overwhelming evidence to support the jury's conclusion that Alvarez was guilty of possession of marijuana with intent to distribute. Other than the defendant's claim that the marijuana was for personal use, there was no evidence to contradict Dagenett's testimony that based on the amount of marijuana, the amount of money in the car, the digital scale, and the knives, Alvarez intended to distribute the marijuana. In addition, Dagenett testified that he had "never seen a case where somebody had this quantity [of marijuana] along with [that amount of] cash for personal use." In light of this evidence, we are not firmly convinced the jury would have reached a different verdict if it had received a limiting instruction. Therefore, the error was not clearly erroneous and not reversible.

9

Third, Alvarez argues, again for the first time on appeal, that the district court erred when it preliminarily instructed the jury that a mistrial would be a tremendous expense and inconvenience for the parties, the court, and the taxpayers. We review this instruction issue under the clear error standard articulated above.

When preliminarily instructing the jury, in the context of cautioning the jury regarding engaging in any independent investigation, the district judge stated:

> "Any juror who violates these restrictions I've explained to you jeopardizes the fairness of these proceeding and a mistrial could result that would require the entire trial process to start over. As you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, the Court, and the taxpayers."

Defense counsel did not object to the district court's preliminary instruction.

The recent Kansas Supreme Court case *State v. Tahah*, 302 Kan. 783, 358 P.3d 819 (2015), *cert. denied* 577 U.S. ___ (February 29, 2016), is dispositive of this issue. There, the district court instructed the jury that a mistrial would be a "'tremendous expense and inconvenience to the parties, the Court and the tax payers.'" 302 Kan. at 792. This language is identical to the language used in the preliminary instruction to the jury in the case at hand. The *Tahah* court elaborated:

> "The instruction occurred at the start of trial, before the presentation of evidence, and warned jurors of the dangers of a mistrial resulting from their own misconduct. As such, its coercive effect (to prevent juror misconduct) is entirely proper and justified. Moreover, because its purpose is proper, the instruction is factually accurate. The prospect of a mistrial due to juror misconduct—especially when viewed from the pretrial vantage point of the parties—is, in fact, equally inconvenient and undesirable to both

parties. In particular, it interferes with the defendant's right to a speedy resolution of the criminal allegations against him or her. . . .

"Juror misconduct imposes grave costs not only to the parties and others involved in the trial process, but significantly to the integrity of our jury trial criminal justice system itself, which depends on the honest and ethical behavior of jurors. . . . In light of these considerations, we hold that the warning against juror misconduct contained in PIK Civ. 4th 101.12 is both legally and factually accurate in the criminal context as well as the civil." 302 Kan. at 795.

The district court did not err when it gave the jury this preliminary instruction.

## DID THE STATE COMMIT PROSECUTORIAL MISCONDUCT?

Fourth, Alvarez argues that the prosecutor committed prosecutorial misconduct by diluting the jury's right to nullify. During voir dire the prosecutor asked the prospective jurors about their views on drug laws. During this line of questioning the prosecutor stated:

"Now, explained—[we] explained about your job earlier where you all are required to look at the evidence that is presented in court, take the instructions that the Judge will give you and to decide from those facts or evidence that's presented what your verdict is gonna be. Now, unfortunately, I don't make the law. None of us make the law, at least I don't think in this room.

"Does everyone understand that even if you don't agree with the laws, drug laws, any type of law, that the only way to fix that is to go to your legislature, go to your Congress person to champion them to make a different law? It's not here in the courtroom. Does everyone understand that? Can everyone agree that no matter what their feelings are about drug law, drug cases [good] or bad, that they'll be able to set aside their personal feelings in order to come with a fair verdict? Does everyone agree that they will apply the law whether or not you agree with it? All right."

Defense counsel did not object to these statements.

11

Comments by the prosecutor during the voir dire process are subject to prosecutorial misconduct standards. *State v. Simmons*, 292 Kan. 406, 411-12, 254 P.3d 94 (2011). A claim of prosecutorial misconduct based on comments not regarding evidence made during voir dire, opening statements, or closing argument will be reviewed on appeal even when a contemporaneous objection was not made at the trial level. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200, *cert. denied* 133 S. Ct. 529 (2012).

"Our standard of review of a prosecutor's alleged misconduct . . . involves a two-step process:  (1) Did prosecutorial misconduct take place, and, if so, (2) does the prosecutorial misconduct rise to the level of plain error and thus require reversal?" *State v. King*, 288 Kan. 333, 351, 204 P.3d 585 (2009). Plain error exists if the court determines that the comments by the prosecutor "prejudiced the jury against the defendant and denied the defendant a fair trial." *Simmons*, 292 Kan. 406, Syl. ¶ 1. If error is found, the State "must bear the burden of demonstrating 'beyond a reasonable doubt that the error complained of . . . did not affect the outcome of the trial in light of the entire record.'" *State v. Hall*, 292 Kan. 841, 855, 257 P.3d 272 (2011) (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6).

Alvarez argues that the jury's right to nullify was diluted because of the prosecutor's comments during voir dire. Jury nullification is

> "[a] jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." Black's Law Dictionary 989 (10th ed. 2014).

In *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014), our Supreme Court considered the legal appropriateness of an instruction that told the jury: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the

first degree on either or both theories, then you *will* enter a verdict of guilty.'" The *Smith-Parker* court held that this instruction improperly impeded the jury's right to nullify:

> "Although we have rejected a defense argument that a criminal jury should be instructed on its inherent power of nullification, see *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 (2011) (juries possess power to decide case contrary to applicable facts and law, *i.e.*, power of jury nullification, but defendant not entitled to instruction on power), the district judge's instruction in this case went too far in the other direction. It essentially forbade the jury from exercising its power of nullification. *Cf. State v. McClanahan*, 212 Kan. 208, Syl. ¶ 3, 510 P.2d 153 (1973) ('Although it must be conceded that the jurors in a criminal case have the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant, it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon.'). [T]he wording of the instruction at issue . . . here—'will'—fl[ies] too close to the sun of directing a verdict for the State. A judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164.

The case at hand differs from *Smith-Parker*. First, the prosecutor was attempting to question the potential jurors' ability to apply the law on an issue. The prosecutor appeared to be addressing the issue of bias in the potential jurors. It is proper for a prosecutor to inquire whether potential jurors have deep feelings about a particular law and to ask if those jurors would find it impossible to apply a particular law because of personal feelings. See *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985) (holding capital juror can be excluded if "juror's views would prevent or subsequently impair performance of his duties as a juror in accordance with his instructions and his oath"). Second, while the *Smith-Parker* court stated that "'must' and 'will' fly too close to the sun of directing a verdict for the State," 301 Kan. at 164, the prosecutor's use of the word "will" in this case was completely different than in *Smith-Parker*. Here, the prosecutor asked the potential jurors, "Does everyone agree that they will apply the law whether or not you agree with it?" This question is analogous to the

oath that each empaneled juror takes: "The jurors must swear or affirm to try the case conscientiously and return a verdict according to the law and the evidence." K.S.A. 2015 Supp. 60-247(d). The prosecutor was giving jurors an opportunity to exclude themselves if their biases would not allow them to apply the law. Third, the prosecutor did not say, "You will find him guilty"; he simply asked if the potential jury members would follow the law if they were selected. It was a question, not a statement. Fourth, the statement in *Smith-Parker* came from the judge during jury instructions after all of the evidence had been heard. Here, the prosecutor asked the question during voir dire before the potential jurors had heard any evidence or arguments in the case. The case at hand is not analogous to *Smith-Parker*.

Additionally, Alvarez argues that the prosecutor misstated the law when he asked if the potential jurors understood that laws were changed by the legislature, not in the courtroom. Alvarez argues that legislation is not the only way to change the law; nullification can also change the law. However, this argument mischaracterizes nullification. Jury nullification is a "knowing and deliberate rejection of the evidence or refusal to *apply* the law," not to change the law. (Emphasis added.) See Black's Law Dictionary 989. The prosecutor's statement was just a simple description of the structure of our government and constitution. The legislature has the power to make and change the laws; the executive branch has the power to enforce the laws; and the judiciary has the power to interpret and apply the laws. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 59, 687 P.2d 622 (1984). The prosecutor did not make a misstatement of law, and there was no prosecutorial misconduct.

DID CUMULATIVE ERROR PREVENT A FAIR TRIAL?

Finally, Alvarez argues cumulative error denied him a fair trial. Cumulative error exists when under the totality of the circumstances the defendant was substantially prejudiced by the errors and was denied a fair trial. *State v. Holt*, 300 Kan. 985, 1007,

14

336 P.3d 312 (2014.) In assessing the cumulative effect of errors during the trial, we examine the errors "in the context of the record as a whole considering how the trial judge dealt with the errors as they arose . . . ; the nature and number of errors committed and their interrelationship, if any; and the strength of the evidence." 300 Kan. at 1007. No cumulative error will be found when the record fails to support the errors defendant raises on appeal. *State v. Betancourt*, 299 Kan. 131, 147, 322 P.3d 353 (2014). A single error cannot constitute cumulative error. *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014).

Here, there is no cumulative error. While the district court erred by failing to provide a limiting instruction on prior bad acts, such error was not reversible and there was no other error. With only one error, there cannot be cumulative error.

Affirmed.