No. 101,667

STATE OF KANSAS, *Appellee*, v. KAMARONTE D. JONES, *Appellant*.

(286 P.3d 562)

Opinion filed October 12, 2012.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: Kamaronte D. Jones appeals his convictions of first-degree murder and criminal possession of a firearm. He asserts the district court erred in (1) instructing the jury it could consider his gang membership, (2) giving an outdated eyewitness identification instruction that he requested, and (3) failing to give a lesser included offense instruction, despite his request that the instruction not be given. Finding no error, we affirm Jones' convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Jones with first-degree murder and criminal possession of a firearm for shooting and killing Keith Peters on August 26, 2007, after Keith attempted to break up a fight between two rival gangs. Several trial witnesses recounted the events surrounding the shooting. Their testimony is summarized below.

The evening of the shooting, members of two rival gangs, the Bloods and the Crips, were present at a party on Catalina Street. Both groups were "flying their colors," *i.e.*, wearing gang rags around their necks—the Crips wore blue and the Bloods wore red. Jones was among the Crips at the party. He wore a blue bandana and carried a black handgun in his waistband. Jones claimed to others at the party that he was a "trey five seven" Crip—a specific set, or group, within the larger Crips organization. Jones instigated a fight with the Bloods when he held his hand over the gun in his waistband and commented, "[W]hat's up cuz."

Officer Clayton Schuler testified that Bloods refer to each other as "Blood" or use other words beginning with the letter "B," while Crips refer to each other as "cuz" or use words beginning with the letter "C." Schuler testified that when "you do it the other way around, usually you're asking for trouble," because that is a sign of disrespect.

As Jones prepared to fight a Blood, everyone was told to leave the party. Jones and others left the party and walked to another party approximately three blocks away on Fortuna Street. At the Fortuna Street party, Keith Peters acted as security, checking party-goers for weapons, drugs, and alcohol before allowing them into the house. At the party, Bloods and Crips members were "getting hyped," throwing up gang signs, and disrespecting each other. Myron Peters, Keith's brother, saw Keith tell Jones to leave after Jones tried to bring liquor or a gun into the party.

At some point, a fight broke out between a Crip and a Blood outside the house. Others joined in, and Keith stepped in to separate the two groups. Although Keith broke up the fight, some bickering continued. Several Crips headed to cars located across the street to get their "burners," or guns. Dominique Peters, another of Keith's brothers, saw Jones go to a white car across the street and get a gun. On their way back to the house, the Crips yelled "trey five seven" and "what's up, cuz."

Dominique and Myron saw a "light-skinned" male standing in the street firing shots into the air. Keontae Peters, another of Keith's brothers, later identified the person who fired shots in the air as DeQualyn Shaffer. As Shaffer fired the shots, everyone began to run away from the party. Dominique heard Keith telling everyone to go inside the house. At trial, Myron testified he saw Jones waving the gun in Keith's face, but Myron ran off when Shaffer fired shots into the air. On the night of the shooting, Myron told police he saw Jones reach behind him, pull a gun out, and point it at Keith's face.

As Keith turned around, Dominique saw Jones fire four shots at Keith, shooting him in the arm. According to Dominique, "a grip part or a clip or something" fell from the gun as Jones fired the gun. As Keith attempted to run toward the back of the house, Jones raised his gun again and fired six rounds at Keith. Jones then ran back across the street and drove off in the same white car from which he had retrieved the gun.

Officers found a black rubber revolver grip at the scene of the shooting near where Dominique saw something fall from Jones' gun. DNA extracted from the grip showed a mixture of DNA from

three different persons; Jones, who is African-American, could not be excluded as a contributor to the DNA profile. Evidence at trial indicated that the possibility of selecting an unrelated individual at random as a potential contributor to the DNA profile obtained from the grip was 1 in 85.7 million in the Caucasian population, 1 in 5.34 million in the African-American population, and 1 in 143 million in the Hispanic population. Two bullets found in Keith's body were determined to be fired from the same gun, and the State's firearms expert testified both bullets were consistent with being fired from a revolver rather than a semiautomatic pistol.

A jury found Jones guilty as charged of first-degree murder and criminal possession of a firearm. The district court sentenced Jones to a hard 25 life sentence on the first-degree murder charge and 9 months' imprisonment on the weapons charge, with the sentences to be served consecutively.

## ANALYSIS

*The district court did not err in giving a limiting instruction regarding gang evidence.*

In this direct appeal, Jones first contends the district court erred by instructing the jury:

"Evidence has been admitted tending to prove the defendant was a member of a gang. This evidence, if believed, was not allowed and may not be considered by you to prove he's a person of bad character or that he has a disposition to commit crimes. This evidence may be considered solely for the purpose of proving defendant's motive, intent, relationship of the parties, identification and to explain the inexplicable."

In his appeal brief, Jones concedes he did not object at trial to either the admissibility of the gang evidence or to the limiting instruction as given. And on appeal, Jones does not argue the gang evidence was inadmissible. Instead, he contends the gang evidence was not admissible for all of the purposes specified in the instruction, and the district court should have omitted the last sentence of the limiting instruction. However, at oral argument on this appeal, Jones switched tactics and argued the trial court should not have issued a limiting instruction.

Citing *State v. Brown*, 285 Kan. 261, 297-300, 173 P.3d 612 (2007), the State contends that while gang evidence is admissible to show bias or establish motive for an otherwise inexplicable act, gang evidence is also admissible when it is relevant to explain the events surrounding the commission of the crime. The State asserts that the instruction given by the district court was appropriate because the gang evidence in this case was relevant to the events surrounding the crime and helped explain an otherwise inexplicable act. Further, the State contends the modified limiting instruction Jones now suggests would have been less favorable to Jones, as the jury would have been permitted to consider the gang evidence for *any* reason other than to prove he was a person of bad character or that he had a disposition to commit crimes.

Because Jones concedes he did not object to the giving of the instruction regarding gang evidence, K.S.A. 22-3414(3) describes our standard of review. That standard provides in relevant part:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 22-3414(3).

We recently explained that although K.S.A. 22-3414(3) "purports to withhold appellate jurisdiction in the absence of a proper objection, the statute's exception effectively conveys such jurisdiction and preserves for appellate review any claim that the instruction error was clearly erroneous." *State v. Williams*, 295 Kan. 506, 515, 286 P.3d 195 (2012).

In *Williams*, we held that in order to determine whether the district court's giving of or failure to give a jury instruction was clearly erroneous under K.S.A. 22-3414(3), the reviewing court must necessarily first determine whether the instruction was erroneous. This review for error presents a legal question subject to unlimited review. *Williams*, 295 Kan. at 515-16. We further explained that in applying K.S.A. 22-3414(3), the reviewing court engages in a reversibility determination only after determining the district court erred in giving or failing to give a particular instruction. The test to determine whether an instruction error requires reversal is whether the reviewing court is firmly convinced that the

jury would have reached a different verdict had the instruction error not occurred. This assessment, because it requires a review of the entire record, is de novo. *Williams*, 295 Kan. at 516. Thus, in this case, we must first determine if the gang evidence instruction was erroneous.

We have consistently and repeatedly held that gang evidence is not evidence of a crime or civil wrong under K.S.A. 60-455. See, *e.g., State v. Peppers*, 294 Kan. 377, 387-88, 276 P.3d 148 (2012); *State v. Conway*, 284 Kan. 37, 48, 50, 159 P.3d 917 (2007); *State v. Goodson*, 281 Kan. 913, 925, 135 P.3d 1116 (2006); *State v. Ross*, 280 Kan. 878, 886, 127 P.3d 249, *cert. denied* 548 U.S. 912 (2006); *State v. Lowe*, 276 Kan. 957, 963, 80 P.3d 1156 (2003); *State v. Bailey*, 251 Kan. 156, 166, 834 P.2d 342 (1992) ("membership alone in the Insane Crips gang is not a crime or civil wrong"), *modified on other grounds by State v. Willis*, 254 Kan. 119, 864 P.2d 1198 (1993).

Instead, gang evidence is generally admissible if relevant, and "[t]he statute that addresses the admission of gang evidence is K.S.A. 60-445." *Ross*, 280 Kan. at 886; see *Peppers*, 294 Kan. at 386; *State v. Knighten*, 260 Kan. 47, 53, 917 P.2d 1324 (1996). K.S.A. 60-445 provides the district court with discretion to exclude admissible evidence if the court determines the probative value of the evidence "is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered"; the statute does not place any categorical limitations on the admission of evidence. See *Conway*, 284 Kan. at 50 ("The legislature specifically limited the admissibility of evidence of crimes and civil wrongs in K.S.A. 60-455; no similar legislative statement exists with regard to evidence of gang affiliation.").

But Jones does not contend on appeal that the evidence was inadmissible or that the trial court erred in admitting the evidence. Instead, he argues the limiting instruction was overbroad and permitted the jury to consider the evidence for impermissible purposes. He argues this consideration prejudiced him and entitled him to a new trial.

We have recognized that "gang evidence may be prejudicial to a defendant, just as any evidence offered against a defendant on trial for the crime charged is often prejudicial. [Citation omitted.]" *Conway*, 284 Kan. at 50. But because K.S.A. 60-455 does not apply, a district court is not required to give a limiting instruction when gang evidence is admitted. *Conway*, 284 Kan. at 49-50; *State v. Gholston*, 272 Kan. 601, 614, 35 P.3d 868 (2001), *cert. denied* 536 U.S. 963 (2002); *State v. Jamison*, 269 Kan. 564, 568, 7 P.3d 1204 (2000).

Because no limiting instruction was requested or even required, we simply cannot say that it was error for the district court to, *sua sponte*, give a prophylactic limiting instruction in this case. That is particularly true in light of Jones' argument on appeal regarding the instruction.

Specifically, Jones contends that this court has limited the admissibility of gang evidence to when it is relevant to show bias and to explain an otherwise inexplicable motive. Because the limiting instruction given by the trial court in this case contained several additional bases for consideration of the gang evidence, Jones argues the instruction was erroneous. But contrary to Jones' contentions, while we have held that gang evidence may be relevant to show bias and to explain an otherwise inexplicable motive, this court has not held that gang evidence is admissible *only* for these two reasons. Rather, we have held that, generally, evidence of gang affiliation or involvement with gang activity is admissible if relevant and, specifically, that such evidence may be relevant for several reasons. See, *e.g.*, *Peppers*, 294 Kan. at 380 (motive); *Brown*, 285 Kan. at 298-300 (motive for an otherwise inexplicable act); *State v. Winston*, 281 Kan. 1114, 1129, 1135, 135 P.3d 1072 (2006) (identity, motive, necessary context for crimes); *State v. Tatum*, 281 Kan. 1098, 1109, 135 P.3d 1088 (2006) (same); *Ross*, 280 Kan. at 886-88 (witness bias or interest); *Lowe*, 276 Kan. at 961-63 (motive for an otherwise inexplicable event); *Gholston*, 272 Kan. at 614 (same); *State v. Walker*, 252 Kan. 117, 137, 843 P.2d 203 (1992) (same).

Thus, we conclude the district court did not err in giving a limiting instruction that referred to several potential purposes for ad-

mitting the gang evidence. Moreover, even if we agreed with Jones that the gang evidence was not relevant to some of the purposes mentioned in the instruction, Jones' suggested instruction contradicts his own appeal argument. Jones argues the instruction given allowed the jury to consider the gang evidence for "anything and everything," and he contends the district court should have given the jury only the first sentence of the instruction: "Evidence has been admitted tending to prove the defendant was a member of a gang. This evidence, if believed, was not allowed and may not be considered by you to prove he is a person of bad character or that he has a disposition to commit crimes."

But as the State points out, had the district court given only the first sentence of the instruction as Jones now proposes, the jury would have been permitted to consider the admitted gang evidence for *any* purpose other than to prove Jones was a person of bad character or that he had a disposition to commit crimes. Instead, the district court instructed the jury to consider the evidence for the specific purposes mentioned. Thus, the instruction given by the district court was more favorable to Jones than the instruction he now advocates.

Under these circumstances, it was not error for the district court to fail to give the instruction now suggested by Jones on appeal.

*The doctrine of invited error precludes Jones' remaining challenges.*

*Eyewitness identification instruction*

Next, Jones challenges the district court's use of PIK Crim. 3d 52.20 to instruct the jury regarding eyewitness identification. The State argues Jones invited any error because he requested the instruction he now challenges. At oral argument, Jones conceded he requested the eyewitness identification instruction he challenges on appeal.

As discussed, ordinarily when the party challenging an instruction given by the district court failed to object to the instruction given, we review the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3); *Williams*, 295 Kan. at 515. However, in this case, we need not determine whether the district court's eyewitness identification instruction was clearly erroneous because

Jones' challenge to the instruction is precluded by the rule of invited error. See *State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011) (a defendant may not invite error and then complain of the error on appeal).

### *Lesser included offense instruction*

Citing K.S.A. 22-3414(3), Jones contends that because there was some evidence of the lesser included offense of second-degree murder, the district court erred in failing to instruct the jury on that crime. The State contends that just as Jones invited error as to the eyewitness instruction, he also invited error as to the lesser included offense instruction, precluding him from asserting such error on appeal.

The record reveals that during an instruction conference outside the presence of the jury, the district court indicated a willingness to instruct the jury on the lesser included offense of second-degree murder, but Jones' counsel objected to giving such an instruction. The judge then explained to Jones the distinction between first-degree murder and second-degree murder, and advised him that if he was found guilty of first-degree murder, he would receive a life sentence with no parole eligibility for 25 years. After conferring with his counsel, Jones indicated on the record that he understood and agreed with his counsel's request that the court not give the lesser included second-degree murder instruction.

Jones' belated and inconsistent objection to the failure to give a lesser included instruction is controlled by *State v. Angelo*, 287 Kan. 262, 278-80, 197 P.3d 337 (2008). There, we held that while a district court has a duty to instruct on all lesser included offenses reasonably justified by the evidence presented at trial, a defendant cannot complain on appeal of a district court's action when the defendant invited and led the district court into error by requesting the court not give a lesser included offense instruction. 287 Kan. at 280. Although not critical to our decision, we noted in *Angelo* that "a denial of relief is particularly appropriate where [the defendant] twice told the court personally that he did not want the instruction, even after acknowledging that he could not appeal from the consequences of his decision." 287 Kan. at 280.

Similarly, during the instruction conference in this case, the district court indicated its willingness to instruct the jury on second-degree murder, but Jones' counsel objected to such an instruction. Nevertheless, the trial judge explained to Jones the distinction between first-degree murder and second-degree murder and explained the hard 25 sentence he would face if found guilty of first-degree murder. Despite the trial court's warning, Jones personally affirmed on the record his agreement with his counsel's request that the lesser included offense instruction not be given.

Under these circumstances, Jones invited the error of which he now complains, precluding his assertion of this error on appeal.

Affirmed.