NOT DESIGNATED FOR PUBLICATION

No. 112,877

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAMIEN CORTEZ FORD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed May 6, 2016. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., GREEN and LEBEN, JJ.

*Per Curiam*: Damien Ford appeals his jury trial conviction and sentence for one count of fleeing and eluding. Ford raises three issues for our consideration. The first issue is whether the trial court erred in failing to give the proper statutory definition of reckless driving in the instruction on the fleeing and attempting to elude charge. The second issue is whether the trial court erred when it instructed the jury on the burden of proof in this case because the instruction took away the jury's right to jury nullification. The third issue is whether the trial court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), (1) when it sentenced him to an aggravated sentence in

1

the grid box without requiring that the aggravating factors be proved to a jury and (2) when it used his prior convictions to increase his sentence without requiring the prior convictions be proved to a jury. Finding no reversible error, we affirm.

Shortly before 2 a.m. on February 10, 2013, Trooper Stephen Schneider was notified of an erratic driver on westbound Interstate 70. Trooper Schneider found a car that matched the description, a white Chevy Monte Carlo, at the east Topeka toll plaza. Trooper Schneider saw the driver open the car door to pay the toll because the car was parked too far away from the toll booth to reach the collector through the window.

Trooper Schneider followed the car and saw it "weaving back and forth on top of the white lane marker." Trooper Schneider turned on his lights to pull the car over, but the car failed to pull over. Trooper Schneider then turned on his siren; and after a short time, the vehicle pulled over to the right shoulder. Although the driver pulled over, part of the car was still on the road and part of the car was on the shoulder.

Trooper Schneider walked up to the driver's side of the car and saw two black males. The driver was wearing a white T-shirt with a gray and red baseball cap, and the passenger was wearing blue jeans and a dark polo-style shirt.

Trooper Schneider said, "[H]i, there" to the men, and the driver started yelling that his brother was having a seizure. Trooper Schneider looked at the passenger of the car who was in the front seat hunched over. The passenger then started jumping or throwing himself back in the seat. The driver repeatedly stated, "'[M]y brother is having a seizure, I got to go.'"

Trooper Schneider had witnessed a couple of people having seizures before and did not believe that the passenger's actions were consistent with his previous observations. Nevertheless, Trooper Schneider told the driver that he would get his

2

brother help but that the driver would need to pull his car all the way off the road. At that point, the driver laughed and drove away, spinning his tires as he took off westbound. Trooper Schneider ordered the driver to stop as he sped off, but the driver did not stop.

Trooper Schneider followed the car on I-70, reaching speeds of around 90 mph. The car took the Carnahan exit, went down the ramp and ran through a stop sign, then reentered I-70 continuing westbound. The car then exited at the California exit, failed to stop at the stop sign, turned northbound, then back eastbound without using a signal. The car failed to stop at another stop sign and after rounding a slight curve Trooper Schneider lost sight of the car. Trooper Schneider told headquarters that he had lost sight of the car and drove around the neighborhood for a few minutes looking for the car.

About 6 minutes later, Officer Jason Schumacher with the Topeka Police Department found the car parked at 2715 SE Gilmore Court. Officer Schumacher waited for backup officers to arrive and then approached the car. No one was inside the car, but a black male came walking from the house towards the car talking loudly on the phone. The man identified himself as Ford. Ford told Officer Schumacher that the car was not his but that it could be his girlfriend's. Ford told Officer Schumacher that he did not live in the area and that he did not have an answer for why he was there. Officer Schumacher then placed Ford in handcuffs and waited for Trooper Schneider to come identify him. After Trooper Schneider identified Ford as the driver of the car, Ford was taken into custody.

Based on this incident, Ford was charged with one count of eluding police, one count of driving under the influence, and one count of reckless driving. The first trial on these three charges ended in a mistrial after the jury was unable to come to a verdict on any of the counts. At a second trial, the jury convicted Ford of fleeing or attempting to elude police and reckless driving. The jury did not reach a verdict on the driving under the influence charge.

3

At sentencing, the trial court dismissed the reckless driving charge as multiplicitous with the fleeing and eluding charge and also dismissed the driving under the influence charge with the State's agreement not to further pursue that charge. Based on a criminal history score of C, the trial court sentenced Ford to 13 months in prison with 12 months of postrelease supervision, suspended in favor of 12 months' probation. Ford timely appealed.

*Did the Trial Court Err in Instructing the Jury on the Fleeing and Attempting to Elude Charge by Failing to Give the Proper Statutory Definition of the Underlying Crime of Reckless Driving?*

On appeal, Ford argues that the trial court erred in failing to give the proper statutory definition of reckless driving in the instruction on the fleeing and attempting to elude charge.

As Ford candidly concedes, he did not object to the trial court's PIK Crim. 4th 66.660 instruction on reckless driving in either trial. This failure to object is consequential: A party may not claim error because the trial court gave or failed to give a jury instruction unless (1) the party objects before the jury retires, stating distinctly the matter to which the party objects and the grounds for the objection; or (2) the instruction or the failure to give the instruction is clearly erroneous. See K.S.A. 2015 Supp. 22-3414(3); *State v. Smyser*, 297 Kan.199, 204, 299 P.3d 309 (2013). Nevertheless, Ford maintains that the instruction was clearly erroneous and that it constituted reversible error.

A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Under the invited error doctrine, a defendant cannot challenge an instruction on appeal, even as clearly erroneous under K.S.A. 2015 Supp. 22-3414(3), when there has been an on-the-record agreement to the

wording of the instruction at trial. *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012).

In his reply brief, Ford responded to the State's invited error argument by alleging that invited error did not apply to this case because the requested instructions were requested in Ford's first trial which ended in a mistrial. Ford maintains that his counsel for his second trial did not submit any proposed instruction, therefore, he could not have invited this error.

In this case, Ford's original counsel submitted proposed instructions before Ford's first trial which included the language Ford now complains of on appeal. After the jury could not reach a verdict, the trial ended in a mistrial. Ford was appointed new counsel to represent him in his second trial. Neither the State nor Ford's new counsel submitted proposed instructions before Ford's second trial. Instead, after no objections were made by either party during the instruction conference, the trial judge explained that she was simply using the instructions from the first trial:

> "THE COURT: Okay. That was very easy, obviously because we had it in trial before. I did make one change from what I used before and I think we had two different definitions of reckless. . . . That's not in there, but I think it's the same as what is the instructions when we had the first trial on this matter.
> . . . .
> "THE COURT: That is the explanation of the one change that was made. Anything further?"
> "Ford's Counsel: No."

Based on the trial court's comments, it is clear that the jury instructions that were proposed and used in the first trial were also used in Ford's second trial. Thus, there was no need for the State or Ford's counsel to submit new proposed instructions before the

5

second trial. Moreover, the trial court asked both parties if they wished to have any additional instructions or if they objected to any of the instructions. Both parties said no.

As a result, Ford is now effectively taking issue with what he originally asked the trial court to do and he is trying to turn the trial court's instruction on the fleeing and attempting to elude charge into a reversible error. Generally, a defendant may not invite an instructional error and then complain on appeal. See *State v. Jones*, 295 Kan. 804, 811-12, 286 P.3d 562 (2012) (appellate court need not consider whether the giving of or failure to give a jury instruction was clearly erroneous where the defendant invites the error by requesting the instruction); *State v. Bailey*, 292 Kan. 449, 459, 255 P.3d 19 (2011) ("When defendant's requested instruction is given to the jury, the defendant cannot complain the requested instruction was error on appeal."); *State v. Smith*, 232 Kan. 128, Syl. ¶ 2, 652 P.2d 703 (1982) ("Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review."); see also *State v. Cabrera-Sanchez*, No. 112,588, 2016 WL 197805, at *5-6 (Kan. App. 2016) (unpublished opinion) (invited error forecloses appellate review when defendant requests a comparable instruction, even if the instruction is worded slightly differently, as long as they convey the same direction to the jury).

The simple fact is that Ford proposed the complained-of instruction that was used by the court in both of his trials. Ford cannot complain about the trial court using this instruction when he was the one who asked the court to use it. Indeed, during the instruction conference of the second trial, the trial judge explained that she was changing the instructions given in the first trial because the instructions contained "two different definitions of reckless" driving. It seems the trial judge deleted one of those definitions from the instructions. Ford's counsel had no problem with the trial court deleting one of the definitions for reckless driving that was used in the first trial. This is a clear indication that Ford's counsel was okay with the trial court using the jury instructions that were

proposed and used in the first trial. Thus, Ford actively contributed to what he now claims was error.

Nevertheless, even if we did not apply the invited error doctrine to bar Ford from raising this issue on appeal, Ford's argument is still fatally flawed.

Ford argues that because the definition of reckless driving given to the jury did not include the required statutory definition, the jury instruction on the fleeing and attempting to elude charge was erroneous. Because the instructions given were legally and factually appropriate, Ford's argument fails.

Ford was charged and convicted of one count of eluding police. See 2015 Supp. K.S.A. 8-1568(b)(1)(C). That subsection states: "(b) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude . . . when given visual or audible signal to bring the vehicle to a stop, and who; (1) Commits any one of the following during a police pursuit; . . . (C) engages in reckless driving as defined by K.S.A. 8-1566." K.S.A. 2015 Supp. 8-1568(b)(1)(C).

At trial, the trial court instructed the jury in accordance with PIK Crim. 4th 66.110 and PIK Crim.  4th 66.060 in Instruction Nos. 7 and 10. Instruction No. 7 stated:

"The defendant is charged in Count 1 with fleeing or attempting to elude a police officer. The defendant pleads not guilty.
"To establish this charge, each of the following must be proved:
"1. The defendant was driving a motor vehicle.
"2. The defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.
"3. The defendant intentionally failed or refused to bring the motor vehicle to a stop, or otherwise fled or attempted to elude a pursing police vehicle.

7

"4. The police officer giving such a signal was in uniform, prominently displaying such officer's badge of office.

"5. The police officer's vehicle was appropriately marked showing it to be an official police vehicle.

"6. The defendant engaged in reckless driving.

"7. This act occurred on or about the 10th day of February, 2013, in Shawnee County, Kansas.

"The elements of reckless driving are set forth in instruction no. 10."

Instruction No. 10 stated:

"The defendant is charged in Count 3 with reckless driving. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant was driving a vehicle.

"2. The defendant was driving in a reckless manner.

"3. This act occurred on or about the 10th day of February, 2013, in Shawnee County, Kansas.

"'Reckless' means driving a vehicle under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger."

Kansas law provides that "[i]n determining whether a specific jury instruction was erroneous," the appellate court considers "the instructions as a whole without isolating any one instruction and reviews the instruction to see whether it properly and fairly stated the law as applied to the facts of the case and could not have reasonably misled the jury." *State v. Horton*, 300 Kan. 477, 491, 331 P.3d 752 (2014).

A trial court has the duty to define the offense charged in the jury instructions, either in the language of the statute or in appropriate and accurate language of the court. *State v. Richardson*, 290 Kan. 176, 181, 224 P.3d 553 (2010). The instructions given by the trial court followed PIK Crim. 4th 66.110 (fleeing or attempting to elude) and PIK

8

Crim. 4th 66.060 (reckless driving). The trial court used the standard PIK instructions for the crime alleged which instructed the jury that one of the elements that must be proved beyond a reasonable doubt is that the defendant "engaged in reckless driving." While the use of PIK instructions is not mandatory, it is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. Absent a particular need under the facts of a case to alter the PIK instructions, they should be followed. *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013), *rev. denied* 300 Kan. 1104 (2014).

Furthermore, while the trial court did not define "reckless" in the exact language of the statute, it did use appropriate and accurate language from the PIK instructions, which is a practice approved of by our Supreme Court. See *State v. Dominquez*, 299 Kan. 567, 575-76, 328 P.3d 1094 (2014). K.S.A. 8-1566 states: "Any person who drives any vehicle in willful or wanton disregard for the safety of person or property is guilty of reckless driving." Similarly, PIK Crim. 4th 66.060 states: "Reckless means driving a vehicle under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger."

Ford solely focuses on the word "wanton" in the statutory definition of reckless driving under K.S.A. 8-1566. Citing Black's Law Dictionary 1576 (7th ed. 1999), Ford points out that the word "wanton" usually connotes malice, but *reckless* does not. Ford then tersely stated: "Therein lies the quandary." Nevertheless, Ford ignores that the word "wanton" is used as a disjunctive in K.S.A. 8-1566. The companion disjunctive used that statute is the word "willful." The word "or" between willful and wanton is used in the exclusive sense, meaning "willful or wanton," but not both. Garner, A Dictionary of Modern Legal Usage 936 (Oxford 2d ed. 1995) notes that the word "willful" is "'a term of art and is often used as meaning no more than a high degree of carelessness or recklessness. It is not necessarily limited in its use to intentional or deliberate wrong-

9

doing.'" Thus, the word willful can denote a lesser degree of culpability than the word wanton. Because Ford's argument hinges solely on the meaning of the word wanton—to the exclusion of its disjunctive willful—his argument will not bear nearly the weight of reliance which Ford places on it.

To the extent that Ford argues that *Richardson*, provides support for his argument, the State contends it is distinguishable and inapplicable to this case. In *Richardson*, our Supreme Court held that because "moving violation" was not defined by the fleeing and eluding statute and "is not a simply matter of common knowledge" by the jurors, it was error not to instruct the jury on the specific underlying moving violations and their elements. See 290 Kan. at 180-83.

Ford acknowledges that *Richardson* dealt with an entirely different subsection of the statute and a different argument as to why the instruction given was clearly erroneous, but he still asserts that its rationale should be applied in this case. *Richardson* is not analogous to this case and dealt with the issue of when the jury needed to be provided a further definition of the term "moving violations" included in the jury instruction. Here, the jury was given the additional definition of "reckless" and was not missing that definition as was the case in *Richardson*. Ford takes issue with the wording of the definition, not that the definition was missing entirely from the jury instruction. Thus, Ford's reliance on *Richardson* is misplaced.

In sum, because the word willful can mean a high degree of carelessness or recklessness, the definition of reckless driving under Jury Instruction No. 10 was not clearly erroneous.

*Did the Trial Court Err When It Instructed the Jury on the Burden of Proof in This Case?*

Next, Ford argues that the trial court erred when it instructed the jury on the burden of proof in this case because the instruction took away the jury's right to jury nullification. Nevertheless, Ford fails to acknowledge that criminal defendants are not entitled to have the jury instructed on its inherent power of nullification—the power to disregard the rules of law and evidence in order to acquit the defendant based upon the jurors' sympathies, notions of right and wrong, or a desire to send a message on some social issue. See *State v. Naputi*, 293 Kan. 55, 65-66, 260 P.3d 86 (2011) (Juries should not be instructed on nullification because "[i]t is not the role of the jury to rewrite clearly intended legislation, nor is it the role of the courts to instruct the jury that it may ignore the rule of law, no matter how draconian it might be.").

Still, Ford complains it was improper to provide the juries in both trials with the following instruction on reasonable doubt: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.) In Ford's view, the trial "court erred in not giving a more legally accurate modified version of this instruction." Ford concedes that he did not object to the trial court's instruction on reasonable doubt in either trial. Thus, we apply the clearly erroneous rule, which we set out under Issue 1.

First, we must address the State's assertion that we should not review whether the trial court's reasonable doubt instructions because Ford invited error of which he now complains. Indeed, before his first trial, Ford requested a reasonable doubt instruction that was virtually identical to the instruction the trial court ultimately provided to the jury. Ford's proposed instruction included the sentence which he now, for the first time on appeal, claims was erroneous: "If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.)

11

As stated earlier, a defendant may not invite error and then complain of the error on appeal. See *Verser*, 299 Kan. at 784. In other words, "'[w]here a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review.'" *State v. Schreiner*, 46 Kan. App. 2d 778, 788, 264 P.3d 1033 (2011), *rev. denied* 296 Kan. 1135 (2013); see *Bailey*, 292 Kan. at 459 ("When defendant's requested instruction is given to the jury, the defendant cannot complain the requested instruction was error on appeal.").

We do not believe that Ford should be allowed to sandbag the trial court by proposing an instruction which is given and then argue on appeal that the instruction was erroneous. We determine that Ford actively contributed to what he now claims was trial error. Nevertheless, for the sake of argument, we will address the merits of Ford's argument.

The reasonable doubt instruction the trial court provided at each jury trial is identical to PIK Crim. 3d 52.02. (The post-2005 version of PIK Crim. 3d 52.02 is identical to PIK Crim. 4th 51.010.) Nevertheless, Ford contends that it was legally inappropriate for the trial court to utilize PIK Crim. 4th 51.010 because the use of the word "should," rather than "may," erroneously provides for a mandatory adjudication of guilt upon a finding that all elements of the charged crimes were proven beyond a reasonable doubt.

In support of his argument, Ford cites *State v. Smith-Parker*, 301 Kan. 132, Syl. ¶ 6, 340 P.3d 485 (2014). Smith-Parker argued that the trial court misstated the law on reasonable doubt when it gave the jury the following instruction on first-degree murder: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.'" 301 Kan. at 163. Of relevance to Ford's appeal, Smith-Parker argued that the trial court should have provided the jury with "the general reasonable doubt instruction . . .

12

[t]hat . . . said: 'If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty.'" 301 Kan. at 163.

Our Supreme Court agreed with Smith-Parker's argument: "Although we have rejected a defense argument that a criminal jury should be instructed on its inherent power of nullification, [citation omitted], the district judge's instruction in this case went too far in the other direction. It essentially forbade the jury from exercising its power of nullification. [Citation omitted.]." 301 Kan. at 164. Our Supreme Court determined that the word "will" used in the first-degree murder instruction essentially directed a verdict for the State and a judge "cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164.

Nevertheless, Smith-Parker did not object to and our Supreme Court did not disapprove of the use of the word "should" used in the general reasonable doubt instruction in *Smith-Parker*. This distinguishes *Smith-Parker* from Ford's argument in this appeal where he is objecting to the use of the word should in the reasonable doubt instruction. Unlike the words "must," "shall," and "will," the word should does not express a mandatory, unyielding duty or obligation. As a result, PIK Crim. 4th 51.010 does not direct a verdict for the State.

Moreover, PIK Crim. 4th 51.010 equally protects the rights of the accused and the State, as its description of the proper function and duty of a jury is fully consistent with our statutory law. For example, K.S.A. 2015 Supp. 60-247(d) provides: "The jurors must swear or affirm to try the case conscientiously and return a verdict according to the law and the evidence." Indeed, in *State v. McClanahan*, 212 Kan. 208, 216-17, 510 P.2d 153 (1973), our Supreme Court stated:

13

"The administration of justice cannot be left to community standards or community conscience but must depend upon the protections afforded by the rule of law. The jury must be directed to apply the rules of law to the evidence even though it must do so in the face of public outcry and indignation. Disregard for the principles of established law creates anarchy and destroys the very protections which the law affords an accused. Finally, to permit a jury to disregard the principles of law laid down by a trial court is contrary to the statutory law of this state. [Citation omitted.]

. . . .

"Although it must be conceded that the jurors in a criminal case have the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant, *it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon*." (Emphasis added.)

Finally, this court recently rejected an argument similar to Ford. See *State v. Jones*, No. 111,386, 2015 WL 4716235 at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. ___ (February 18, 2016). In *Jones*, the defendant contended the trial court should have granted his request to alter PIK Crim. 4th 51.010 by using the word "may" instead of "should," because "the jury was not under an obligation to make a guilty finding." 2015 WL 4716235, at *6. Our court disagreed, explaining:

"Jones claims his proposed jury instruction was legally appropriate because the PIK instruction spoke in terms of a mandatory adjudication of guilt and, thus, erroneously informed the jury that it had no right to nullify. Although the use of PIK instructions is not required, it is strongly recommended, as those instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. 'Absent a particular need under the facts of a case to alter . . . PIK instructions, they should be followed.' *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013), *rev. denied* 300 Kan. 1104 (2014). Jones' requested jury instruction was not legally appropriate. The district court correctly declined to use Jones' proposed jury instruction and provided the proper jury instruction." 2015 WL 4716235, at *6.

14

In addition, this court recently rejected the same argument in *State v. Singleton*, No. 112,997, 2016 WL 368083, at \*4-6 (Kan. App. 2016) (unpublished opinion). There, as here, the trial court instructed the jury using PIK 4th Crim. 51.010, which the defendant argued eliminated the possibility of jury nullification. Moreover, like in this case, the defendant insisted that the word *should* compelled the jury to convict, contravening other cases that disapproved of imperatives like *must* or *will*. Nevertheless, this court held:

> "But as every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. [Citation omitted.] . . . Should as used in this instruction is not the equivalent of 'must' or 'will' used in the instructions discussed in [other cases]. *Should* is advisory. It is not an imperative. The district court did not err in giving this instruction." 2016 WL 368083, at \*6.

We agree with the rationale stated in *Jones* and *Singleton* and find them persuasive in resolving this issue.

In summary, we hold the trial court did not err when it provided the jury with PIK Crim. 4th 51.010. This instruction was not clearly erroneous. Thus, Ford's argument fails.

*Did the Trial Court Violate* Apprendi *When It (1) Sentenced Ford to an Aggravated Sentence without Requiring the Aggravating Factors be Proved to a Jury; and (2) Used Ford's Prior Convictions to Increase His Sentence Without Requiring the State to Prove Them to a Jury Beyond a Reasonable Doubt?*

Finally, Ford argues that the trial court violated *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because: (1) The trial court sentenced him to an aggravated sentence in the grid box without requiring that the aggravating factors be proved to a jury; and (2) the trial court used his prior convictions to increase his sentence without requiring the prior convictions be proved to a jury.

Ford acknowledges that our Supreme Court has considered and rejected similar arguments in *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008), and *State v. Ivory,* 273 Kan. 44, 46-48, 41 P.3d 781 (2002), but raises the issues to preserve them for federal review. This court is duty bound to follow our Supreme Court precedent absent some indication that the court is departing from its earlier position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (September 14, 2015). There is no indication that our Supreme Court is departing from its holdings in *Johnson* or *Ivory*, thus, we are duty bound to affirm.  See *State v. Barber*, 302 Kan. 367, 386, 353 P.3d 1108 (2015); *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012).

Affirmed.