NOT DESIGNATED FOR PUBLICATION

No. 114,805

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JIMMY DEAN CROCKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES FRANKLIN DAVIS, judge. Opinion filed May 12, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*:  Following a jury trial, Jimmy Dean Crocker was convicted of rape and aggravated burglary. He now appeals, arguing that (1) the district court erred in failing to instruct the jury on the lesser included offense of attempted rape; (2) the district court improperly classified his 1976 Missouri misdemeanor convictions as person offenses; and (3) the district court improperly converted Crocker's three Missouri misdemeanor convictions into a person felony. We affirm the district court on the first and second issues, but we agree with Crocker's complaints about the misdemeanor

conversion issue and, therefore, reverse and remand with instructions for resentencing Crocker.

FACTS

Crocker performed occasional handyman work for J.D. and helped her around the house. On July 26, 2012, J.D. was napping when she heard her dogs bark. When she got out of bed to investigate, J.D. found Crocker in her house. J.D. told Crocker to leave, but he refused. Instead, Crocker grabbed J.D., put his hand over her mouth, and dragged her down the hallway. After a struggle, both J.D. and Crocker fell down the basement steps. Crocker then proceeded to rape J.D.

The State charged Crocker with rape and aggravated burglary. Crocker's jury trial began on August 5, 2013. Crocker did not testify at trial, but his theory of defense was that while he was in J.D.'s house and he did have sexual contact with her, he did not rape J.D. At the instructions conference, Crocker's attorney informed the district court that although he believed the evidence supported the lesser included offense of attempted rape, Crocker did not want the court to instruct the jury on the lesser included offense. Crocker's attorney explained to the court that he disagreed with Crocker's choice, but it was Crocker's choice to make. After questioning Crocker and ensuring that he understood the consequences of waiving a lesser included instruction, the district court accepted Crocker's waiver.

The jury convicted Crocker of rape and aggravated burglary. The presentence investigation report revealed that Crocker had three Missouri misdemeanor convictions for common assault. Accordingly, the district court aggregated those three misdemeanor convictions into one person felony and assigned Crocker a criminal history score of D. Crocker did not object to his criminal history score at sentencing. Because of his criminal history, the district court imposed the aggravated sentence for the rape conviction and

2

sentenced Crocker to 267 months' imprisonment. The district court also sentenced Crocker to 34 months for his aggravated burglary conviction to run consecutively with his sentence for rape. Crocker timely appealed.

ANALYSIS

*Waiver of the attempted rape instruction*

Crocker first argues that the district court committed reversible error when it failed to instruct the jury on the lesser included offense of attempted rape. Although Crocker explicitly waived the instruction, he contends he should not be precluded from raising this issue on appeal because whether to request the lesser included instruction was his attorney's decision to make, not Crocker's. Crocker further complains that the district court had an independent duty to instruct on the lesser included offense because it was legally and factually appropriate; he contends any caselaw forgiving this duty when a defendant expressly waives the instruction is wrongly decided. The bottom line is that Crocker believes his waiver was invalid and the district court's failure to instruct the jury on attempted rape was clear error. Crocker asks this court to reverse his conviction.

The State, on the other hand, points to the fact that a defendant cannot request that a district court not give a lesser included instruction and then complain on appeal because the defendant invited the error. Thus, since Crocker explicitly asked the district court not to give the lesser included instruction of attempted rape, he invited any alleged error and this court ought not consider his claim. The State argues that even if this court considers Crocker's claim, there is no evidence supporting the lesser included offense of attempted rape, so it was not legally or factually appropriate to give the lesser included instruction. Finally, the State contends that even if the district court erred, the error was harmless because there is no evidence that the jury would have reached a different verdict if it had been instructed on attempted rape.

3

When analyzing jury instruction issues, appellate courts follow a three-step process. First the court asks whether there is appellate jurisdiction to consider the issue or whether it was preserved for appeal. Next, the court considers the merits of the claim to determine whether the district court erred. Finally, the appellate court assesses whether the error merits reversal or if it can be considered harmless. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015).

Crocker's express waiver of the lesser included instruction of attempted rape precludes this court from considering his claim of error on appeal.

> "[A] party may not invite or prompt error in a case and then complain of that error as a ground for reversing an adverse judgment. [Citation omitted.] The long-standing rule reflects the common-sense notion that parties cannot complain to an appellate court about their own conduct at trial—or that of their lawyers—or about rulings they have asked (or invited) a judge to make." *State v. Hargrove*, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013).

Our Supreme Court is clear that the invited error doctrine will override a defendant's statutory right to request jury instructions on lesser included offenses. See, *e.g.*, *State v. Jones*, 295 Kan. 804, 812-13, 286 P.3d 562 (2012); *State v. Angelo*, 287 Kan. 262, 280, 197 P.3d 337 (2008). As explained in *Jones*:

> "[W]hile a district court has a duty to instruct on all lesser included offenses reasonably justified by the evidence presented at trial, a defendant cannot complain on appeal of a district court's action when the defendant invited and led the district court into error by requesting the court not give a lesser included offense instruction." 295 Kan. at 812.

Crocker attempts to distinguish his case from *Jones* because Jones' attorney objected to the lesser included instruction; here, Crocker waived the instruction against his counsel's advice. This distinction is unpersuasive. In *Jones*, our Supreme Court noted

4

that although Jones' counsel objected to the lesser included instruction, it was Jones himself who waived it. The district court explained the distinction between the two offenses and ensured that Jones understood that he was waiving the instruction. "Jones personally affirmed on the record his agreement with his counsel's request that the lesser included offense instruction not be given." 295 Kan. at 813.

Similarly, in *Angelo*, 287 Kan. at 280, the Kansas Supreme Court held that a defendant cannot complain about the district court's failure to instruct the jury on a lesser included offense when the defendant himself requested that the instruction not be given. The court went on to note that "a denial of relief is particularly appropriate where Angelo twice told the court personally that he did not want the instruction, even after acknowledging that he could not appeal from the consequences of his decision, *e.g.*, because of invited error." 287 Kan. at 280. Thus, an analysis of whether a defendant invited error turns on whether the defendant himself personally asked the court not to give the lesser included instruction; it is irrelevant whether defense counsel was in agreement.

Here, like in *Jones* and *Angelo*, Crocker personally told the court on multiple occasions that he did not want the attempted rape instruction:

> "THE COURT: . . . The question has come up during the course of the evidence and in the instructions whether the evidence presented at trial would support a charge of attempted rape. The point is, the conviction of attempted rape carries a lesser punishment than the charge of rape.
> "[Defense counsel] indicates that his legal position is that the evidence would support—and he would like to offer for the jury's consideration—an instruction on attempted rape. He further indicates, however, you are not in agreement with that position.
> "THE DEFENDANT: That's correct.

"THE COURT: We want to make clear what your position is. You do not want the charge of attempted rape even though it could result in less severe punishment if you are convicted?

"THE DEFENDANT: That's correct.

"THE COURT: You've thought this over very carefully?

"THE DEFENDANT: Yes.

"THE COURT: You've talked it over with [defense counsel]?

"THE DEFENDANT: Yes, I have.

"THE COURT: This is your decision not to submit or request the Court to submit a charge of attempted rape?

"THE DEFENDANT: That's correct.

"THE COURT: I will accept your decision here."

It does not matter that Crocker's attorney disagreed with his decision because Crocker cannot complain on appeal about a ruling he personally and explicitly asked the judge to make—even though he may now have second thoughts about his request. See *Hargrove*, 48 Kan. App. 2d at 531. Like the defendants in *Jones* and *Angelo*, Crocker personally told the district court that he did not want a lesser included instruction of attempted rape. The district court ensured that Crocker understood what he was waiving and Crocker "personally affirmed on the record" that he did not want the attempted rape instruction. See *Jones*, 295 Kan. at 813. Since Crocker invited any error, he cannot now complain of it on appeal and this court is precluded from considering the merits of his claim.

Crocker also contends that even if he cannot raise this issue under *Jones* or *Angelo*, those cases were wrongly decided. The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Crocker's argument fails.

6

*Classification of the prior Missouri misdemeanor convictions*

Crocker next contests the district court's classifying two of his Missouri misdemeanor convictions for common assault as person crimes. Under Kansas law, the district court can aggregate three person misdemeanor convictions into a person felony for the purposes of determining the defendant's criminal history score. Crocker claims that because there is no comparable Kansas offense to his 1976 Missouri convictions for common assault, his out-of-state convictions should have been classified as nonperson misdemeanors under *Apprendi v. New Jersey*, 530 U.S. 446, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). Accordingly, Crocker asks this court to remand his case for resentencing with a correct criminal history score that does not aggregate Crocker's misdemeanors into a person felony.

The State argues that the Missouri common assault statute is comparable to Kansas' assault and simple battery statutes. Therefore, because it "encompasses more than one Kansas statute," the Missouri statute is divisible in that it encompasses two crimes: assault and battery. Because the Missouri statute is divisible, the State contends we must apply the modified categorical approach which permits the court to review a limited set of documents to determine which parts of the Missouri statute it should compare to the Kansas offense. The State argues, however, that Crocker has not designated a sufficient record to permit this court to perform a modified categorical analysis because he failed to include any charging documents, plea agreements, or jury instructions from his Missouri convictions. Accordingly, the State asks this court to remand the case for a hearing to determine whether Crocker's Missouri common assault convictions are person offenses.

Although Crocker did not object to his criminal history score at sentencing, an illegal sentence can be corrected at any time. K.S.A. 22-3504(1). Likewise, a legal challenge to the district court's classification of a prior conviction for the purposes of

7

determining a defendant's criminal history score can be raised for the first time on appeal because such a challenge "essentially raises a claim that the sentence imposed does not conform with the applicable statutory provision regarding the term of punishment." *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which an appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Similarly, whether a prior conviction was properly classified as a person or nonperson offense for criminal history purposes is a question of law subject to unlimited appellate review. *Dickey*, 301 Kan. at 1034.

The district court found that Crocker's criminal history score was D, which is the appropriate score for one adult conviction for a person felony. See K.S.A. 2016 Supp. 21-6809. The court arrived at this score by aggregating Crocker's three Missouri misdemeanor convictions for common assault and converting them into a person felony. Crocker's two 1976 common assault convictions were violations of state law; his remaining 1979 conviction was a municipal violation. On appeal, Crocker only contests the district court's classification of his two 1976 Missouri state misdemeanor convictions for common assault.

Under the revised Kansas Sentencing Guidelines Act (KSGA), a defendant's sentence is based on the severity level of the current offense and the criminal history score of the defendant. See K.S.A. 2016 Supp. 21-6804(a). The severity level of an offense is set out in the applicable Kansas criminal statute. See, *e.g.*, K.S.A. 2016 Supp. 21-5503(b)(1) (rape is a severity level 1 or 2 person felony). A defendant's criminal history score, on the other hand, is determined by the district court. To calculate a criminal history score, the district court lists all of the defendant's prior convictions and then classifies them depending on whether they are felonies or misdemeanors and whether they are person or nonperson crimes. Based on the number of prior convictions

8

and their classifications, the district court then assigns the defendant a criminal history score ranging anywhere from I (no criminal history or one misdemeanor) to A (three or more person felonies). K.S.A. 2016 Supp. 21-6809.

K.S.A. 2016 Supp. 21-6811(a) provides that "[e]very three prior adult convictions . . . of class A and class B person misdemeanors . . . shall be rated as one adult conviction . . . of a person felony for criminal history purposes." The Kansas sentencing scheme includes out-of-state convictions in a defendant's criminal history score. K.S.A. 2016 Supp. 21-6811(e). Whether an out-of-state conviction is a misdemeanor or a felony depends on how it is classified by the convicting jurisdiction. K.S.A. 2016 Supp. 21-6811(e)(2). Then, the district court must determine whether the out-of-state conviction is a person or nonperson crime.

> "In designating a crime as person or nonperson, comparable offenses under the Kansas
> criminal code in effect on the date the current crime of conviction was committed shall be
> referred to. If the state of Kansas does not have a comparable offense in effect on the date
> the current crime of conviction was committed, the out-of-state conviction shall be
> classified as a nonperson crime." K.S.A. 2016 Supp. 21-6811(e)(3).

In *Apprendi*, 530 U.S. at 490, the United States Supreme Court ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Therefore, a sentencing court is constitutionally prohibited from making additional factual findings beyond identifying the statutory elements of the offense when classifying an out-of-state conviction for criminal history purposes. *Dickey*, 301 Kan. at 1039. To prevent sentencing courts from engaging in factfinding in violation of *Apprendi*, the United States Supreme Court set out two approaches when examining prior convictions for sentencing purposes in *Descamps*, 133 S. Ct. at 2281-84, which our Supreme Court adopted in *Dickey*: the categorical approach and the modified categorical approach.

9

The categorical approach applies when the statute of conviction contains a single set of elements that constitute the crime. *Dickey*, 301 Kan. at 1037 (citing *Descamps*, 133 S. Ct. at 2281). Under the categorical approach the sentencing court compares "'the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime.'" *Dickey*, 301 Kan. at 1037 (citing *Descamps*, 133 S. Ct. at 2281). If the statutes are comparable and the offense is a person crime in Kansas, the out-of-state crime can be classified as a person offense.

The modified categorical approach, on the other hand, is applicable "when the statute forming the basis of the prior conviction is a 'divisible statute,' *i.e.*, a statute which includes multiple, alternative versions of the crime and at least one of the versions matches the elements of the generic offense." *Dickey*, 301 Kan. at 1037 (citing *Descamps*, 133 S. Ct. at 2281). In other words, a statute is divisible if it provides alternative ways of committing the crime. *State v. Moore*, 52 Kan. App. 2d 799, 807, 377 P.3d 1162 (2016), *rev. granted* 305 Kan. __ (December 13, 2016). Under the modified categorical approach, the sentencing court can "look beyond the elements of the statute and examine a limited class of documents to determine 'which of a statute's alternative elements formed the basis of the defendant's prior conviction.'" *Dickey*, 301 Kan. at 1037-38 (quoting *Descamps*, 133 S. Ct. at 2284).

In accordance with our Supreme Court's directive in *Dickey*, when addressing the classification of Crocker's Missouri misdemeanors this court must first determine whether the Missouri statute forming the basis of his conviction is a divisible statute. If so, then the court is to apply the modified categorical approach to determine whether Crocker's Missouri convictions are person crimes. If, however, the Missouri statute of conviction is an indivisible statute in that it "contains a single set of elements constituting the crime," this court will apply the categorical approach. See *Descamps*, 133 S. Ct. at 2281.

10

Both Crocker and the State agree that Crocker was convicted under the Missouri "common assault" statute, Mo. Rev. Stat. § 559.220 (1969). Common assault is defined as:

> "Common assault.—Any person who shall assault or beat or wound another, under such circumstances as to not constitute any other offense herein defined, shall, upon conviction, be punished by a fine not exceeding one hundred dollars, or imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

As explained by the Missouri Court of Appeals: "Common assault may be defined as any intentional unlawful offer of bodily injury to another by force, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented, *or offensive contact*, or the offer thereof." (Emphasis added.) *State v. Higgins*, 252 S.W.2d 641, 646 (Mo. App. 1952).

Thus, the Missouri common-assault statute provides multiple ways of committing the crime. A person commits common assault if he or she "create[s] a well-founded fear of imminent peril," which is comparable to the Kansas simple assault statute. See *Higgins*, 252 S.W.2d at 646; see also K.S.A. 2016 Supp. 21-5412(a) ("Assault is knowingly placing another person in reasonable apprehension of immediate bodily harm."). Assault is a class C person misdemeanor. K.S.A. 2016 Supp. 21-5412(e)(1).

A person also commits common assault in Missouri if he or she beats or wounds another, which is comparable to the Kansas battery statute. See K.S.A. 2016 Supp. 21-5413(a). ("Battery is: [1] [k]nowingly or recklessly causing bodily harm to another person; or [2] knowingly causing physical contact with another person when done in a rude, insulting or angry manner."). Battery is a class B person misdemeanor. K.S.A. 2016 Supp. 21-5413(g)(1).

11

Because the Missouri common-assault statute is divisible, we must apply the modified categorical approach to determine whether Crocker's Missouri common-assault conviction is a person or nonperson crime.

Crocker argues that his Missouri convictions are not comparable to any Kansas crimes because the Missouri statute encompasses a broader range of conduct than the Kansas battery statute. However, "in Kansas, there's no statutory requirement that an out-of-state offense be identical or narrower than the comparable Kansas offense." *Moore*, 52 Kan. App. 2d at 813-14. Although the Kansas Supreme Court adopted the categorical and modified categorical approaches from *Descamps* in its *Dickey* decision, our court only focused on the *Apprendi* principles in *Descamps* and did not adopt its "identical-or-narrower" rule. *Moore*, 52 Kan. App. 2d at 814.

Instead, when determining whether offenses are comparable, "[t]he essential question is whether the offenses are similar in nature and cover similar conduct." *State v. Martinez*, 50 Kan. App. 2d 1244, 1249, 338 P.3d 1236 (2014). The court is to look for the Kansas offense that is the "closest approximation" to the statute of conviction; however, the elements of the out-of-state conviction do not need to be identical to the elements of the Kansas crime to be comparable under K.S.A. 2016 Supp. 21-6811(e)(3). *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003), *overruled in part on other grounds by Dickey*, 301 Kan. 1018. "Offenses may be comparable 'even when the out-of-state statute encompassed some acts not necessarily encompassed by the Kansas statutes. [Citation omitted.]" *State v. Buell*, 52 Kan. App. 2d 818, 826, 377 P.3d 1174 (2016), *rev. granted* 305 Kan. __ (December 13, 2016).

Here, the Kansas simple assault and simple battery statutes are comparable with the Missouri common-assault statute because the offenses are similar in nature and cover similar criminal conduct—threatened or actually harmful or offensive physical contact. See *State v. Sanders*, No. 114,748, 2016 WL 4586166, at *6 (Kan. App. 2016)

12

(unpublished opinion), *petition for rev. filed* October 3, 2016. Although the Missouri statute uses the phrase "assault or beat or wound," the proscribed conduct is the same as in the Kansas statutes which prohibit assault causing bodily harm to another person or causing unwanted physical contact. Put otherwise, the Kansas statute prohibits threatened (assault) or actual bodily harm (battery) and the Missouri statute prohibits conduct that is virtually identical. As discussed above, the actual elements of the crime do not have to be identical in the two statutes; instead, the offenses just must be similar in nature. Both statutes prohibit creating a fear of bodily harm or actually physically harming another person. As explained by a panel of this court:

> "When determining whether the out-of-state conviction is a person offense, if the element of the crime that causes it to be a person offense is identical in both the comparable Kansas offense and the out-of-state offense for which the defendant was convicted, there is no problem under *Apprendi* and the offense can be classified as a person offense even if the two statutes don't match up perfectly in all other respects." Moore, 52 Kan. App. 2d 799, Syl. ¶ 6.

Even though the Kansas statutes creating the crimes of simple assault and simple battery do not "match up" word for word with the Missouri common-assault statute, they are sufficiently comparable to satisfy *Apprendi*. The district court did not err in concluding that Crocker's Missouri common-assault convictions were person misdemeanors.

Finally, Crocker argues that the statutes are not comparable because the Kansas battery statute contains a mens rea element that is not present in the Missouri common-assault statute. Under Missouri law, when there is no expressly prescribed culpable mental state in a criminal statute, the applicable mens rea is purposely or knowingly. See Mo Rev. Stat. § 562.021 (1969). Thus, while Mo. Rev. Stat. § 559.220 does not expressly contain an element of mens rea, Mo. Rev. Stat. § 562.021 dictates that it is purposely or

knowingly; purposely is the same mens rea as intentionally in Kansas. Compare Mo. Rev. Stat. § 562.016 (1969), with K.S.A. 2016 Supp. 21-5202.

The Kansas assault statute requires that the defendant acted knowingly. K.S.A. 2016 Supp. 21-5412(a). The battery statute requires that the defendant acted knowingly or recklessly. K.S.A. 2016 Supp. 21-5413(a). Thus, even though the requisite mens rea for common assault is contained in a separate Missouri statute, it is nonetheless comparable to the mens rea in the Kansas assault and battery statutes. While the Missouri statute includes purposely, "[p]roof of a higher degree of culpability than that charged constitutes proof of the culpability charged. . . . If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally." K.S.A. 2016 Supp. 21-5202(c). Crocker's argument fails.

*Aggregation of Crocker's three Missouri misdemeanor convictions into one person felony*

In his final argument on appeal, Crocker argues that converting his three Missouri misdemeanor convictions into a person felony was not appropriate for another reason. Specifically, Crocker argues that only severity level A or B person misdemeanors are eligible for aggregation under K.S.A. 2016 Supp. 21-6811.

As discussed above, out-of-state convictions are to be included in a defendant's criminal history score. K.S.A. 2016 Supp. 21-6811(e). The Kansas sentencing scheme permits the district court to aggregate every three class A and B person misdemeanor convictions into one person felony conviction. K.S.A. 2016 Supp. 21-6811(a). Prior to 2015, the Kansas sentencing statute provided no method of determining the severity level of an out-of-state misdemeanor conviction. Thus, the Kansas sentencing scheme as it existed at the time of Crocker's criminal act in 2012 and his sentencing in 2013 did not provide any method of calculating the severity level of his Missouri misdemeanors.

14

Our Supreme Court recently reiterated the bedrock principle underlying all criminal sentencing:

> "Because it is a fundamental rule of sentencing that the penalty parameters for a crime are established at the time the crime was committed, the classification of a prior conviction or juvenile adjudication for criminal history purposes under the KSGA must be based on the classification in effect for the comparable offense when the current crime of conviction was committed. [Citation omitted.]" *State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016).

In 2015, K.S.A. 21-6811 was amended to read as follows:

> "If a crime is a misdemeanor in another state, the state of Kansas shall refer to the comparable offense in order to classify the out-of-state crime as a class A, B or C misdemeanor. If the comparable misdemeanor crime in the state of Kansas is a felony, the out-of-state crime shall be classified as a class A misdemeanor. If the state of Kansas does not have a comparable crime, the out-of-state crime shall not be used in classifying the offender's criminal history." K.S.A. 2015 Supp. 21-6811(e)(2)(B).

Although the 2015 amendment to the statute directs the court to determine the severity level of an out-of-state misdemeanor by looking at the comparable Kansas crime, these provisions were not in effect in 2012 or 2013 and, therefore, cannot be used in classifying Crocker's Missouri convictions for common assault as equivalent to class A, B, or C Kansas misdemeanors. By extension, this obviously means that any conversion of Missouri person misdemeanors to a person felony by treating them as prior class A or B person misdemeanors is legally impermissible. In short, deriving any criminal history score by aggregating such unclassifiable misdemeanor convictions to a person felony is reversible error. Crocker is entitled to be sentenced based upon his correct criminal history, and we must remand his case for resentencing with a corrected criminal history score that does not aggregate his Missouri misdemeanors into a person felony.

15

Affirmed in part, reversed in part, and remanded with directions to resentence Crocker without aggregating his Missouri misdemeanor convictions.